UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| PATRICK BUANA-KITOKO MINANGO,<br><br>Plaintiff,<br>v.<br><br>PAMELA BONDI, *et al.,*<br><br>Defendants. | Case No. 2:26-cv-00235-ART-BNW<br><br>ORDER ON AMENDED PETITION<br>FOR WRIT OF HABEAS CORPUS<br>(ECF No. 11) |

Before the Court is Petitioner Patrick Buana-Kitoko Minango's amended petition for habeas corpus, seeking release on the basis that the immigration judge abused his discretion when he denied bond. Mr. Minango filed an amended petition (ECF No. 11), Respondents filed a response (ECF No. 17), and Mr. Minango replied. (ECF No. 18.) On May 1, 2026, the Court held oral argument on this matter. The Court now grants the amended petition and orders Mr. Minango released from detention.

**I.    Background**

Petitioner Patrick Buana-Kitoko Minango is a native of the Republic of the Congo, who was admitted to the United States on March 3, 2015, on an F-1 visa, to be a full-time student at the University of Utah in Salt Lake City. (ECF No. 11.) On March 17, 2016, the University of Utah terminated Mr. Minango's immigration status as a student. (*Id.* at 4.) Mr. Minango later applied for asylum and those proceedings remain ongoing. (*Id.*) On September 17, 2025, Las Vegas police arrested Mr. Minango for supposed misdemeanor larceny. (*Id.*) He was later transferred into Immigrations and Customs Enforcement (ICE) custody. (*Id.*) On January 5, 2026, an immigration judge ("IJ") denied Mr. Minango's bond request. On February 4, 2026, the IJ issued a bond memorandum determining that Mr.

1

Minango is subject to mandatory custody under the Laken Riley Act based on the larceny arrest and found that he is "a danger to the community." (ECF No. 14-1 at 19.)

## II.    Legal Standard

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

## III.    Analysis

Mr. Minango argues that he is entitled to habeas relief because (1) he is not subject to mandatory detention under 8 U.S.C. § 1226(c)(1)(e) ("the Laken Riley Act") and (2) the IJ's finding of dangerousness was legally erroneous. (ECF Nos. 11, 18.)

### A. Jurisdiction

Federal courts generally lack jurisdiction to review discretionary bond determinations, but Section 1226(e) does not preclude judicial review of constitutional claims or questions of law. *Martinez v. Clark*, 124 F.4th 775, 781–82 (9th Cir. 2024); *see also Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011)

("§ 1226(e) does not strip a district court of its traditional habeas jurisdiction, bar constitutional challenges or preclude a district court from addressing a habeas petition challenging the statutory framework that permits the petitioner's detention without bail.") (alterations in original) (citations and quotation marks omitted). "[T]he determination whether an alien is 'dangerous' for immigration-detention purposes is a mixed question of law and fact and is reviewable as a 'question of law," under an abuse of discretion standard. *Martinez,* 124 F.4th at 779 (citing *Wilkinson v. Garland,* 601 U.S. 209 (2024)). Under the abuse of discretion standard, courts "cannot reweigh evidence . . . [but] can [only] determine whether the [IJ] applied the correct legal standard." *Id.* at 785 (citing *Konou v. Holder,* 750 F.3d 1120, 1127 (9th Cir. 2014)). This includes whether the IJ "properly considered the [detention] factors set forth in" *In Re Guerra,* 24 I. & N. Dec. 37 (BIA 2006). *Id.*

### B. Administrative Exhaustion

As a preliminary matter, Respondents argue that the Court should decline to review Mr. Minango's habeas challenge because he failed to exhaust his administrative remedies by appealing the IJ's bond determination to the BIA and awaiting its decision. (ECF No. 17 at 5.)

In the context of habeas corpus claims exhaustion of administrative remedies is a prudential requirement rather than a jurisdictional one, as it is not explicitly required by statute. *Hernandez* v. *Sessions*, 872 F.3d 976, 988 (9th Cir. 2017). "Exhaustion can be either statutorily or judicially required. If exhaustion is required by statute, it may be mandatory and jurisdictional, but courts have discretion to waive a prudential requirement." *Laing v. Ashcroft,* 370 F.3d 994, 998 (9th Cir. 2004). Neither the habeas statute, 8 U.S.C. § 2241, nor the relevant sections of the Immigration and Nationality Act ("INA") require petitioners to exhaust administrative remedies before filing petitions for habeas corpus; accordingly, administrative exhaustion here is prudential and the Court has

discretion to waive it. *Id.* (citing *Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001)). Courts may waive prudential exhaustion if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Laing*, 370 F.3d at 1000 (citation omitted). Mr. Minango bears the burden of demonstrating at least one of the *Laing* factors applies. *See Ortega-Rangel v. Sessions*, 313 F. Supp. 3d 993, 1003 (N.D. Cal. 2018).

The status of Mr. Minango's appeal of the IJ's bond decision is unclear. The initial decision by the IJ on January 5, 2026, denied bond because the IJ determined that Mr. Minango was subject to mandatory custody under the Laken Riley Act and a danger to the community. (ECF No. 14-1 at 15–16.) The record also contains a notice of appeal by Mr. Minango, dated January 18, 2026. (ECF No. 14-1 at 20–24.) The IJ subsequently issued a bond memorandum on February 4, 2026, which again denied bond based on the Laken Riley Act and a finding of dangerousness. (ECF No. 14-1 at 17–19.) There is nothing in the record indicating the BIA ruled on Mr. Minango's bond appeal either before or after the IJ's bond memorandum. What is clear is that the IJ twice stated its reasons for denying bond.

At oral argument, Mr. Minango argued that appealing to the BIA was futile. The Court agrees that his appeal would be futile because the IJ has repeatedly concluded that Mr. Minango is subject to mandatory detention pursuant to the Laken Riley Act and is a danger to the community, and the status of any previous bond appeal is unclear. *See Vasquez-Rodriguez v. Garland*, 7 F.4th 888, 896 (9th Cir. 2021) ("We will excuse a failure to exhaust if it is very likely what [the BIA's] result would have been. Thus, where the agency's position appears already set and recourse to administrative remedies is very likely futile, exhaustion is not required.") (cleaned up).

Additionally, irreparable injury would likely result if Mr. Minango waited

for BIA review. Mr. Minango has been detained for over seven months and will continue to suffer irreparable harm each day he is in immigration detention. (*See* ECF No. 14-1 at 6.) Furthermore, Mr. Minango's claim regarding the IJ's bond determination would become moot if he is removed while he awaits the BIA's review of the IJ's denial of bond. Thus, requiring Mr. Minango to await the resolution of a bond appeal could preclude meaningful review of the bond determination.

For reasons such as these, district courts in the Ninth Circuit routinely waive prudential exhaustion requirements for noncitizens facing prolonged detention while awaiting administrative appeals. *Rodriguez v. Bostock,* 779 F. Supp. 3d 1239, 1243–54 (W.D. Wash. 2025) (collecting cases). The Court thus finds waiver of prudential exhaustion is appropriate in this case.

### C. The Record Fails to Support a Lawful Basis for Detention

Mr. Minango argues that he is entitled to habeas relief because (1) he is not subject to mandatory detention under the Laken Riley Act because he is not an "inadmissible" alien, and (2) the IJ's finding of dangerousness was legally erroneous. (ECF Nos. 11, 18.)

### a. The IJ's Mandatory Detention Determination

The IJ's determination that Mr. Minango was subject to mandatory custody under the Laken Riley Act was legally erroneous because that provision only applies to inadmissible aliens and Mr. Minango is not inadmissible. The Laken Riley Act mandates detention for any noncitizen who is both inadmissible under § 1182(a)(6)(A)(i) and "charged with, arrested for, convicted of, [or] admits" to committing certain crimes.[1] 8 U.S.C. § 1226(c)(1)(E). Section 1182(a)(6)(A)(i) covers people who are "present in the United States without being admitted or

---

[1] Because the Court finds that Mr. Minango is not inadmissible, and therefore does not fall within the purview of the Laken Riley Act, the Court does not reach the question of whether Mr. Minango was actually arrested for larceny.

paroled." As evidenced by the Notice to Appear (ECF No. 14-1 at 2), and Removal Order (ECF No. 17-1 at 28), Mr. Minango was admitted to the United States in 2015 on a F-1 student visa. The Notice to Appear charged him with being "deportable" as that term is used in 8 U.S.C. § 1227(a)(1)(C)(i). The Removal Order confirms that he is deportable, not inadmissible. As a result, Mr. Minango does not fall within the purview of the Laken Riley Act and the IJ's erroneous finding does not provide a lawful basis for Mr. Minango's detention.

### b. The IJ's Dangerousness Determination

The IJ also found that Mr. Minango was a "danger to the community." (ECF No. 14-1 at 18–19.) The IJ did not state that this was an alternative finding under 8 U.S.C. § 1226(a) or what standard was used in determining Mr. Minango's dangerousness. (*Id.*)

When determining whether a noncitizen is a danger to the community or risk of flight, an IJ normally weighs nine factors, pursuant to BIA precedent. *See In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006); *see also Martinez*, 124 F.4th at 783. The nine factors that an IJ "may" consider "include any or all of the following;"

(1) whether the [noncitizen] has a fixed address in the United States; (2) the [noncitizen]'s length of residence in the United States; (3) the [noncitizen]'s family ties in the United States, and whether they may entitle the [noncitizen] to reside permanently in the United States in the future; (4) the [noncitizen]'s employment history; (5) the [noncitizen]'s record of appearance in court; (6) the [noncitizen]'s criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the [noncitizen]'s history of immigration violations; (8) any attempts by the [noncitizen] to flee prosecution or otherwise escape from authorities; and (9) the [noncitizen]'s manner of entry to the United

States.

*Martinez,* 124 F.4th at 783 (citing *In re Guerra,* 24 I. & N. Dec. 37, 40 (BIA 2006)).

The record before it leads the Court to believe that the IJ did not "correctly appl[y] the statutory standard to a given set of facts." *See Martinez,* 124 F.4th at 783. It appears that the IJ only referred to the sixth factor: "the [noncitizen]'s criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses." (*See* ECF No. 14-1 at 17–19.) As stated above, the IJ's dangerousness finding is a reviewable mixed question of law and fact, and the Court cannot ignore that the IJ misconstrued several facts that form the basis of the legal conclusion. The IJ based his finding on a determination that Mr. Minango "did not learn from his first conviction for DUI because he has been arrested again for the same offense and arrested twice for reckless driving." (ECF No. 14-1 at 18.) However, this misstates the record. Mr. Minango was arrested once for the misdemeanor of reckless driving in 2020, and was arrested once for driving under the influence, a misdemeanor, in 2022. (ECF No. 14-1 at 7.) Additionally, the IJ states that "it is clear to the court that [Mr. Minango] has not stopped drinking alcoholic beverages or possessing controlled substances because he has been arrested multiple times." (ECF No. 14-1 at 18.) Mr. Minango's arrests for reckless driving and driving under the influence occurred in 2020, and 2022, respectively. (ECF No. 14-1 at 7.) The IJ cites no evidence to support the assertion that Mr. Minango has not stopped drinking alcoholic beverages or possessing controlled substances since his arrest in 2022. (ECF No. 14-1 at 18.)

"There cannot be a correct application of a standard to a set of facts when the facts relied on are incorrect." *K.G.M.Q. v. Bondi,* No. 2:26-CV-00506-TL, 2026 WL 962609, at *11 (W.D. Wash. Apr. 9, 2026). Additionally, the IJ could not have correctly applied the statutory standard to the set of facts because part of the standard the IJ used considered "the extensiveness of criminal activity." *See*

*Martinez,* 124 F.4th at 783. By misstating that Mr. Minango was arrested twice for drinking under the influence and twice for reckless driving, the IJ mistakenly increased the "extensiveness" of the criminal activity that he considered. Additionally, by stating without evidence, that Mr. Minango has not stopped drinking or possessing controlled substances, the IJ also misstates the "recency" of criminal activity, given that Mr. Minango's most recent arrest relating to those behaviors occurred in 2022. Therefore, the Court finds that the IJ abused his discretion in his consideration of the sixth *Guerra* factor, which resulted in a legal error in the dangerousness finding underlying the detention decision.

The IJ's misapplication of the legal standard also bears on Mr. Minango's due process rights.[2] The Ninth Circuit has held that "we accept that the BIA 'applied the correct legal standard' if the BIA 'expressly cited and applied [the relevant caselaw] in rendering its decision,'" unless "there is an indication that something is amiss." *Martinez,* 124 F.4th at 785 (quoting *Mendez-Castro v. Mukasey,* 552 F.3d 975, 980 (9th Cir. 2009)). Here, the IJ did not cite any relevant caselaw, indicate which statutory authority that it was evaluating dangerousness under, or cite which party had the burden to prove dangerousness. (*See* ECF No. 14-1 at 18.) Additionally, because the IJ misstated basic factual details, the Court has no reason to assume that the IJ applied the correct legal standard. Accordingly, the Court finds that the IJ failed to apply the correct legal standard as required by due process.

While Respondents, in their response to the amended petition, do set forth the statutory framework, generally, for mandatory detention under 8 U.S.C.

---

[2] Mr. Minango has a significant liberty interest in remaining free from detention that must be protected by adequate procedural safeguards. *See Foucha v. Louisiana,* 504 U.S. 71, 80 (1992) ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action."); *see also Rodriguez Diaz v. Garland,* 53 F.4th 1189 (9th Cir. 2022) (finding that a "detained person's liberty interest in substantial").

§ 1226(c), they do not identify another lawful basis for Mr. Minango's detention other than the Laken Riley Act and the IJ's dangerousness finding. (*See* ECF No. 17.) Thus, because Mr. Minango's bond hearing was legally and constitutionally inadequate, and the Court finds no adequate basis for Mr. Minango's continued detention, the Court concludes that the "typical remedy" of release is appropriate. *See Munaf v. Geren,* 553 U.S. 674, 693 (2008) (finding that "[h]abeas is at its core a remedy for unlawful executive detention" and the "typical remedy for such detention is, of course, release."); *Soriano v. Hernandez*, No. 2:26-CV-00900-DGE, 2026 WL 969764, at *6 (W.D. Wash. Apr. 10, 2026) (ordering petitioner's immediate release after finding no basis for continued detention); *Miri v. Bondi,* Case No. 5:26-CV-00698-MEMF-MAR, 2026 WL 622302, at *12 (C.D. Cal. Mar. 5, 2026) (ordering habeas petitioner's immediate release after finding immigration judge abused discretion in denying petitioner's request for bond at the bond determination hearing); *W.T.M. v. Bondi*, No. 2:25-CV-02428-RAJ-BAT, 2026 WL 262583, at *5 (W.D. Wash. Jan. 30, 2026).

**IV.    Conclusion**

IT IS THEREFORE ORDERED that Petitioner's writ of habeas corpus (ECF No. 11) is GRANTED.

IT IS FURTHER ORDERED that Respondents shall release Petitioner from detention by Friday, May 8, 2026.

IT IS FURTHER ORDERED that the parties must file a Joint Status Report no later than May 14, 2026, to certify compliance with the Court's order.

IT IS FURTHER ORDERED that, good cause appearing, Petitioner's unopposed motion to seal (ECF No. 13) is GRANTED.

Dated this 6th day of May 2026.

ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE